UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENITE WEBB**,

    Plaintiff,

v.                                       Case No. 8:19-cv-03045-TPB-TGW

**CITY OF VENICE,**

    Defendant.
_____/

## DEFENDANT'S AMENDED CASE DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, CITY OF VENICE ("Defendant" or "City"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby submits its Case Dispositive Motion for Summary Judgment and Supporting Memorandum of Law.

**I.   INTRODUCTION**

Defendant seeks final summary judgment on all five causes of action set forth in Plaintiff's First Amended Complaint ("FAC"): (1) discriminatory custom in violation of 42 U.S.C. § 1983; (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) retaliation in violation of Title VII; (4) race discrimination in violation of the Florida Civil Rights Act of 1992 ("FCRA"); and (5) retaliation in violation of the FCRA. Broadly stated, there are no material facts in the record to support any of these causes of action.[1] The only adverse action Webb suffered

---

[1] The material facts are set forth in Defendant's Statement of Undisputed Facts ("SUF"), filed simultaneously herewith.

1

was not being selected for a vacant school resource officer assignment and a 48-hour suspension for making an improper arrest, and there is no evidence in the record beyond Webb's conjecture that these actions were discriminatory, retaliatory, or created a hostile work environment. Webb attempts to bolster his baseless claims with a laundry list of ordinary workplace issues, but there is no evidence that any of these occurrences amount to adverse employment action, a hostile work environment, discrimination, or retaliation. Webb cannot survive summary judgment by simply declaring his race and listing every slight he has ever suffered in the workplace. Rather, there must be some evidence that Webb suffered serious and material changes in the conditions of his employment *because of* his race or *because* he engaged in protected activity. To that end, there is no evidence in the record that any employment action taken by the City was discriminatory or retaliatory, that Webb was subjected to a hostile work environment based on his race, or that the City had a pattern or practice of discrimination that violated Webb's rights.

II.     **ARGUMENT**

    A.     <u>Webb's Title VII and FCRA race discrimination claims should be dismissed because Webb was not subjected to disparate treatment.</u>

Summary judgment should be granted as to Webb's claims of race discrimination under Title VII and the FCRA because Webb cannot establish a *prima facie* case of race discrimination and because there is no evidence that the City's legitimate, non-discriminatory reasons for its actions were pretextual.

Title VII and the FCRA prohibit intentional discrimination based on race in the workplace. *See* 42 U.S.C. § 2000e-2(a); § 760.10, Fla. Stat. To prevail on his claim of intentional discrimination, Webb must demonstrate, by direct or circumstantial evidence, that the City had discriminatory intent. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (citations omitted).[2]

Here, there is no direct evidence of discrimination, so Webb must rely on circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Under this framework, Webb bears the initial burden to establish a *prima facie* case of race discrimination by proving that he (1) is a member of a protected class; (2) is qualified for his position; (3) suffered adverse employment action; and (4) was treated less favorably than similarly situated employees outside his protected class. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019).

First, not all the conduct by the City constitutes adverse employment action, even if it negatively affected Webb. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The Eleventh Circuit defines adverse employment action as a "*serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1240; *see also Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012).

---

[2] "Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

While Webb's non-selection for the SRO vacancy and his suspension constitute adverse employment action (SUF ¶¶ 6-21), the remaining action taken by the City does not because it did not result in a serious and material change in the terms, conditions, and privileges of Webb's employment. *See Corbett v. Beseler*, Case No. 3:14-cv-1507-J-32JBT, 2016 WL 5239854 (M.D. Fla. Sept. 22, 2016) (holding that four internal affairs investigations and two written reprimands did not constitute adverse employment action). The internal investigations that were not sustained or resulted in reprimands or counselings did not materially affect Webb's employment or lead to any substantive or progressive discipline. (SUF ¶¶ 22-36); *see Wallace v. Ga. Dep't of Transp.*, 212 F. App'x 799, 801 (11th Cir. 2006) (holding that a written reprimand does not constitute an adverse employment action). Assigning Webb to cover the graffiti does not amount to an adverse employment action in support of Webb's claim. (SUF ¶ 51); *see Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (holding that the performance of more menial tasks did not amount to an adverse employment action), *abrogated on other grounds by Babb v. Wilkie*, 140 S. Ct. 1168 (2020)[3]. The denial of training requests did not materially affect Webb's employment or promotional opportunities, as evidenced by the undisputed fact that Webb was approved for other training opportunities. This includes being approved for training to be a Traffic

---

[3] Although *Trask* dealt with a retaliation claim, the standard to show an adverse action for a retaliation claim is easier to meet than the standard for a discrimination claim. *See Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1268 n.6 (stating that an employment action can "satisfy the retaliation test while simultaneously failing the test for an adverse employment action in the discrimination context").

4

Homicide Investigator, which carries with it additional pay when performing those functions. (SUF ¶¶ 42-49); *see Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1352 (N.D. Fla. 2016) (finding that non-selection for firearms and fitness training was not adverse employment action); *Johnson v. Gestamp Ala., LLC*, 946 F. Supp. 2d 1180, 1202 (N.D. Ala. 2013) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435 n.16 (11th Cir. 1998)) (concluding that denial of training was not an adverse employment action). Moreover, Chief Mattmuller explained that it is common for VPD to deny training requests due to manpower or other reasons, and Webb admits that at least one other officer outside his protected class has been denied training requests. (SUF ¶¶ 43-44).

Regarding his suspension, Webb was not treated less favorably than similarly situated employees outside his protected class. Any proffered comparators must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. Webb has not and cannot identify any other employee who made an unlawful arrest and received more favorable treatment. Webb alleges that Officer Victor Montanez was treated more favorably after making an unlawful arrest, but Officer Montanez was not similarly situated because he was accused of, investigated for, and not sustained for using excessive force and not for making an unlawful arrest. (SUF ¶ 55); *see McPhie v. Yeager*, 819 F. App'x 696, 699–700 (11th Cir. 2020) (holding that comparators were not similarly situated because their misconduct was different from the plaintiff's).

Finally, Webb cannot establish that the City's proffered reasons for its conduct were pretextual. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008). To show pretext, Webb must show that the City's reasons were false and that the real reasons

5

were discriminatory. *See Hicks*, 509 U.S. at 515. However, the Court does not sit "as a super-personnel department that re-examines an entity's business decision." *Alphin v. Sears-Roebuck and Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991). Employers may take employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commcs.*, 738 F.2d 1181, 1187 (11th Cir. 1984).

There is no evidence that any of the City's reasons were false. Webb's suspension was the result of an internal affairs investigation that reached findings upheld by a neutral hearing officer (SUF ¶¶ 16-21); his non-selection for the SRO vacancy was the result of the recommendations of school board employees sitting on an oral review board (SUF ¶¶ 6-15); the internal affairs investigations were initiated and conducted pursuant to agency policy for legitimate reasons, and all disciplinary action and reprimands resulted from those internal affairs investigations (SUF ¶¶ 22-36); and the City articulated credible, nondiscriminatory reasons for denying Webb's training requests (SUF ¶¶ 42-49). *See Barber v. Cellco P'ship*, 808 F. App'x 929, 937 (11th Cir. 2020) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030, 1037 (11th Cir. 2000)) (holding that plaintiff failed to prove pretext because he did not meet defendant's reasons for adverse action "'head on' as is required to survive summary judgment").

There is also no material evidence to establish discriminatory intent, especially regarding Webb's suspension and non-selection for the SRO vacancy. There is no evidence that race factored into the decision to suspend Webb, which was reviewed internally and by a neutral decisionmaker (SUF ¶¶ 16-21), or the decision not to select

6

Webb for the SRO vacancy, which was the result of a recommendation made by non-City employees (SUF ¶¶ 6-15). To the extent Webb alleges that racist remarks by other employees should be considered, stray remarks made by non-decisionmakers are not sufficient to establish pretext. *See Short v. Mando Am. Corp.*, 601 F. App'x 865, 874 (11th Cir. 2015) (citing *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)) (holding that stray remarks unrelated to employment decisions are insufficient to establish a genuine fact issue on pretext). Webb's conjecture that his race was considered is not sufficient to survive summary judgment. *See King v. Chubb & Son*, 563 F. App'x 729, 733–34 (11th Cir. 2014) (quoting *Young v. Gen. Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)) ("'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination . . . .'").

Accordingly, because Webb cannot establish that he suffered any adverse employment action because of his race, the Court should grant summary judgment on his claims for race discrimination under Title VII and the FCRA.

  B. <u>Webb's Title VII and FCRA harassment claims should be dismissed because Webb was not subjected to a hostile work environment.</u>

Summary judgment should be granted as to Webb's hostile work environment claim under Title VII and the FCRA because the harassment was not sufficiently severe or pervasive and because the City should not be held legally responsible. To prevail on his claim for hostile work environment, Webb must prove:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee…; (4) that the harassment was sufficiently severe or pervasive to

7

> alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

First, Webb is clearly unable to demonstrate that any alleged harassment he experienced was sufficiently severe or pervasive. To evaluate the objective severity of the harassment, courts look at the totality of the circumstances and consider the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, or mere offensive utterances, and whether the conduct unreasonably interferes with job performance. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc), *cert. denied* 529 U.S. 1068 (2000). Anti-harassment laws should not be construed as creating a general "civility code" and "conduct must be extreme to amount to a change in terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Teasing, offhand comments, and isolated incidents are not sufficient to alter terms and conditions of employment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986).

Here, over the course of several years, Webb was asked to cover offensive graffiti on a rock, a sergeant allegedly used the n-word on two occasions, one officer asked Webb why he dated white women, and another officer left a banana in the trunk of a shared patrol car, used a bloody emoji as a screensaver, and once referred to Webb as "Black." Taken as a whole, this conduct was not frequent, severe, threatening, or humiliating, and it did not interfere with Webb's job performance. *See Godoy v.*

*Habersham Cty.*, 211 F. App'x 850, 854 (11th Cir. 2006) (granting summary judgment on a hostile work environment claim premised on isolated incidents of derogatory comments); *Brown v. Progress Energy*, No. 8:07-cv-1599-T-26TGW, 2009 WL 212426, at *4 (M.D. Fla. Jan. 29, 2009) (finding the use of the n-word directed at the plaintiff five or six times over the course of four years was not severe or pervasive), *affirmed by* 364 F. App'x 556 (11th Cir. 2010).

Further, there is no evidence that the majority of the conduct above was objectively offensive or racially motivated. While the use of the n-word is offensive, the "mere utterance of an… epithet which engenders offensive feelings in an employee… does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[The racial slurs allegedly spoken by co-workers ha[ve] to be 'so commonplace, overt and denigrating that they create[] an atmosphere charged with racial hostility." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)). Two isolated utterances of the n-word by a single employee, in addition to others asking Webb why he was dating a white woman in 2015 and referring to him as "Black" in 2018 clearly do not meet this standard. *See Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57–58 (11th Cir. 2005) (holding that displays of KKK and a noose, being called the n-word and derogatory names, and threats of violence were not sufficiently severe or pervasive); *Garrett v. Tyco Fire Prods., LP*, 301 F. Supp. 3d 1099, 1119–20 (N.D. Ala. 2018) (granting summary judgment on harassment claim

because being called the n-word on a few occasions and racist graffiti was not sufficiently severe or pervasive).

Additionally, the City should not be held liable because it exercised reasonable care to prevent harassment and Webb unreasonably failed to take advantage of corrective opportunities. *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). It is undisputed that the City has strict anti-harassment policies and reporting procedures and trains all employees on these issues. *See Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 584 (11th Cir. 2007) (stating that a comprehensive anti-harassment policy and reasonable complaint procedure satisfies the employer's burden).[4] It is likewise undisputed that Webb failed to take advantage of these preventative and corrective opportunities as he did not file any harassment complaints regarding the graffiti, the banana, the blood emoji screensaver, the question as to why he was dating a white woman, the use of the n-word, or being called "Black." *See Brown*, 2009 WL 212426, at *4, 5 (granting summary judgment on hostile work environment claim, in part, because the plaintiff never reported racial epithets). Further, when Webb raised his complaint about Officer Long, Lt. Chappa took immediate and appropriate action by preparing a complaint, instructing Webb regarding the steps he needed to take to pursue the complaint, and following up with Webb multiple times. (SUF ¶¶ 52(g)-52(j)). Webb's failure to pursue this complaint or any complaint pursuant to the City's procedures shields the City from liability. (SUF

---

[4] Although this element of the defense also requires the City to promptly correct any racial harassment, there was no racial harassment to correct and Webb failed to pursue his allegations.

¶¶ 52(g)-52(j)); *see Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1306, 1307 (11th Cir. 2007) (holding that employee's failure to promptly report allegations constituted failure to take advantage of preventative measures). Thus, the City cannot be held liable as a matter of law, and Webb's hostile work environment claim necessarily fails.

      C.    <u>Webb's Title VII and FCRA retaliation claims should be dismissed because Webb was not subjected to retaliation.</u>

Summary judgment is due on Webb's Title VII and FCRA retaliation claims because Webb cannot show a causal connection between his protected activity and any adverse employment action, and because Webb cannot establish that the City's proffered reasons were pretext for retaliation. *See Crawford*, 529 F.3d at 970 (holding that the *McDonnell Douglas* framework applies to retaliation claims under Title VII). To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Webb must show (1) he engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Id.* Further, Webb's retaliation claim is even more difficult to prove because it "must be proved according to the traditional principles of 'but for' causation… [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Thus, Webb must show "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 346-47.

11

First, there is no causal connection between Webb's protected activity filing an EEOC Charge in November 2018 and the adverse employment action taken by the City. Webb was not selected for the SRO vacancy in May 2018, six months *before* Webb filed his EEOC Charge. (SUF ¶¶ 14, 54); *see Smith v. City of Ft. Pierce, Fla.*, 565 F. App'x 774, 779 (11th Cir. 2014) (holding that plaintiff could not establish temporal proximity or causation when employment action occurred before protected activity). Further, there is no temporal proximity between Webb's protected activity and his suspension because the investigation that led to Webb was suspended 18 months after he filed his EEOC charge. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). In the absence of other evidence of causation, temporal proximity between protected activity and adverse action must be *very* close in order to establish a causal connection. *Id.* A three-to-four-month disparity is insufficient to show causal connection. *Id.* As there is no other evidence of causation, lack of temporal proximity is fatal to Webb's retaliation claim.

Even if temporal proximity did exist between any of Webb's complaints and any of the employment action taken by the City, Webb's retaliation claim ultimately fails because he cannot establish that any of his complaints were the "but for" cause of the City's employment action because all of the actions would have occurred in the absence of any alleged retaliatory motive. Even if there was also some retaliatory motive as Webb alleges, the City still would have suspended Webb *because he unlawfully arrested a citizen*, and the City still would not have selected Webb for the SRO vacancy because Chief Mattmuller *honored the recommendation of school board employees*. (SUF ¶¶

12

6-21); *see Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739 (2020) ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause."). Thus, because removing the alleged retaliation from the equation would not change the outcomes, "but for" causation does not exist. Finally, to the extent that the other actions taken by the City are considered adverse employment action, there is undisputed evidence in the record that the City had legitimate non-retaliatory reasons for conducting investigations, issuing reprimands, and denying training requests. (SUF ¶¶ 22-36, 42-48); *see supra*, Section II(A). As Webb has offered no evidence that these reasons are pretextual, summary judgment is due to be granted on Webb's retaliation claims.

    D.    <u>Webb's claims under Section 1983 should be dismissed.</u>

As a threshold matter, Section 1983 does not create any substantive rights as it simply provides a statutory vehicle through which a plaintiff may seek redress for alleged violations of the Constitution or federal law. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989). "'[O]ne cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything.' Rather, '§ 1983 merely provides a mechanism for enforcing individual rights secured elsewhere.'" *Yeh Ho v. Sabocik*, 775 F. App'x 551, 553 (11th Cir. 2019) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)) (internal citation and quotations omitted). Here, Webb attempts to do exactly what is proscribed under Section 1983—solely alleging a violation of Section 1983. *See* Doc. 29 at ¶ 69, Count I Wherefore clause at ¶ a. Thus, the City is entitled to summary judgment on Webb's Section 1983 claim.

Additionally, to the extent that Webb's Section 1983 claim is intended to redress alleged violations of 42 U.S.C. § 1981, which to be clear is not plead in the FAC and Defendant does not concede, Webb's claim still fails on its merits. Section 1981 provides a parallel remedy to Title VII for unconstitutional public sector employment discrimination. *Johnson v. City of Ft. Lauderdale*, 148 F.3d 1228, 1230 (11th Cir. 1998). "To prove § 1983 liability against a municipality based on a custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.*

Here, there is no evidence that the City had a policy or a longstanding and widespread practice of discrimination. Even if there were some evidence that the City engaged in discriminatory conduct towards Webb, which there is not, it is undisputed that the alleged discriminatory acts were isolated and sporadic not only regarding Webb, but also throughout the City and VPD. Although there is evidence in the record that the City reached a confidential settlement agreement with the Department of Labor regarding allegations of race discrimination raised by another City employee in which the City denied wrongdoing despite the settlement, two instances of race discrimination are not sufficient evidence of a pattern and practice. *See Hughes v. Ala. Dep't of Pub. Safety*, 994 F. Supp. 1395, 1401 ("[A]n employer's treatment of one other

employee does not establish a pattern and practice."). Further, Webb's allegation that the City employs only two African American employees (*see* Doc. 29 at ¶ 24) does not establish a pattern and practice of discrimination, especially in light of the City's official anti-discrimination policy and extensive training. Finally, Webb's allegation that the City's historic zoning plan and its delay implementing civil rights legislation decades ago establish a pattern and practice of discrimination (*see* Doc. 29 at ¶¶ 26-37) was rejected by the Court during the hearing on Defendant's Motion to Dismiss.

As such, Webb's pattern and practice claim under Section 1983 is nothing more than a veiled disparate treatment or hostile work environment claim, on which the City is entitled to judgment as a matter of law for the reasons identified *supra*, Sections II(A)-(B). *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) (stating that employment discrimination claims against state actors under Section 1983 "are subject to the same standards of proof and use the same analytical framework as discrimination claims brought under Title VII").

Additionally, Webb's Section 1983 claim fails because he cannot show that the constitutional injury resulted from the discriminatory actions of a final policymaker. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). This element requires evidence that the policymaker had discriminatory intent and here, there is no evidence that the City Manager, the VPD Police Chief, or any other decisionmaker had any discriminatory intent. Additionally, the City cannot be held liable under Section 1983 for Webb's suspension under the final policymaker analysis because Webb appealed his discipline

through an evidentiary hearing before a neutral hearing officer and "'final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review.'" *See Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325–26 (11th Cir. 2003) (quoting *Scala*, 116 F.3d at 1401) (holding that county administrator was not the final policymaker with respect to the plaintiff's termination because the administrator's decision to terminate the plaintiff "was subject to meaningful administrative review by the Career Service Council").

### III.   CONCLUSION

Summary judgment should be granted because (1) Webb cannot establish that he was subjected to any adverse employment action because of his race or that any of the City's reasons for taking employment action against Webb were pretext for race discrimination; (2) Webb cannot establish that he was subjected to a hostile work environment; (3) Webb cannot establish that he was subjected to any adverse employment action in retaliation for engaging in protected activity or that any of the City's reasons for taking employment action against Webb were pretext for retaliation; and (4) Webb's Section 1983 claim should be dismissed because it does not allege a substantive constitutional violation and there is no legal basis to hold the City liable for a custom or practice claim.

February 22, 2021                              Respectfully submitted,

                                               */s/ Mark E. Levitt*
                                               Mark E. Levitt, Esq.
                                               Florida Bar No. 0193190
                                               Marc A. Sugerman, Esq.
                                               Florida Bar No. 0081877

ALLEN NORTON & BLUE, P.A.
1477 W. Fairbanks Ave., Suite 100
Winter Park, FL 32789
Telephone: (407) 571-2152
Fax: (407) 571-1496
mlevitt@anblaw.com
msugerman@anblaw.com
tsuarez@anblaw.com
*Counsel for Defendant*

17

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2021, I electronically filed the foregoing via CM/ECF, which will send a notice of electronic filing to:

>Jacqulyn Mack-Majka, Esq.
>MACK LAW FIRM CHARTERED
>2022 Placida Road, Englewood, FL 34224
>Eservice1@macklawfim.org

>>*/s/ Mark E. Levitt*
>>Attorney