## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KENITE WEBB,

      Plaintiff,

v.                                    Case No. 8:19-cv-3045-TPB-TGW

CITY OF VENICE,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on "Defendant's Amended Case Dispositive Motion for Summary Judgment and Supporting Memorandum of Law," filed February 22, 2021. (Doc. 50). Plaintiff responded in opposition on April 28, 2021. (Doc. 68). Defendant filed a reply on May 11, 2021. (Doc. 69). Upon review of the motion, response, reply, court file, and record, the Court finds as follows:

## Background

Defendant City of Venice is a municipality in Sarasota County, Florida. Plaintiff Kenite Webb has been an officer with the Venice Police Department ("VPD") since 2015. Plaintiff alleges that beginning in November 2017 he was subjected to racial discrimination, harassment, and retaliation by Defendant and specifically by the VPD. On December 11, 2019, Plaintiff filed his initial complaint. On May 5, 2020, Plaintiff filed his amended complaint alleging five counts: (1) violation of 42 U.S.C. § 1983 – Discriminatory Custom; (2) violation of Title VII –

Discrimination Based on Race; (3) violation of Title VII – Retaliation; (4) violation of

Florida Civil Rights Act of 1992 ("FCRA") – Discrimination Based on Race; (5)

violation of FCRA – Retaliation.  Defendant has moved for summary judgment on

all counts.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary

judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of

material fact will preclude summary judgment.  *Id*.

The moving party bears the initial burden of showing that there are no

genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

1260 (11th Cir. 2004).  When the moving party has discharged its burden, the

nonmoving party must then designate specific facts showing the existence of

genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590,

593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or

evidence, the nonmoving party's evidence is presumed to be true and all reasonable

inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of

Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the moving party will bear the burden of proof on an issue at trial,

demonstrating the absence of a genuine issue of material fact requires the

submission of credible evidence that, if not controverted at trial, would entitle the

moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the non-moving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

## Analysis

### *Section 1983 (Count I)*

Defendant moves for summary judgment on Plaintiff's Count I under 42 U.S.C. § 1983. Section 1983 is not an independent source of substantive rights but "creates a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (internal quotations omitted). Plaintiff argues that his § 1983 claim is based on an alleged deprivation of his liberty interest under the Fourteenth Amendment to the Constitution. He argues that the placing of negative information in his personnel files relating to internal affairs investigations ("IAs") and a 48-hour suspension without pay have rendered him unemployable, implicating his liberty to engage in work and triggering a right to procedural due process.

A liberty interest is implicated when the government publishes stigmatizing information about the plaintiff that is false and does so in connection with government's alteration of previously existing rights held by the plaintiff, without

providing an opportunity for the plaintiff to clear his name. *See, e.g., Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042-43 (11th Cir. 1989). In the Eleventh Circuit, a "discharge or more" is required to show the requisite alteration of rights, and Plaintiff has not been discharged. *See Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1303 (11th Cir. 2001); *Armiger v. So. Trial Fire Protection & Rescue Serv. Dist.*, No 2:13-cv-825-FtM-38CM, 2014 WL 1877404, at *6 (M.D. Fla. May 9, 2014) (holding that a denial of a promotion is insufficient); *Pilver v. Hillsborough Cty.*, No 8:15-cv-2327-T-23JSS, 2016 WL 7116208, at *2 n.1 (M.D. Fla. Dec. 7, 2016) (noting that, under the "discharge or more" standard, even if the plaintiff had alleged the loss of a day's pay due to a suspension, it would not state a claim), *aff'd*, 698 F. App'x 585 (11th Cir. 2017). Additionally, Plaintiff has offered no evidence or argument showing that he was denied due process in connection with his suspension without pay. *See, e.g., Adamson-James v. Florida Dept. of Corr.*, 6:11-cv-628-Orl-36TBS, 2013 WL 6231265, at *17 (M.D. Fla. Dec. 2, 2013) (granting summary judgment on procedural due process claim where the plaintiff was given notice of the charges, an explanation of the employer's evidence, and the opportunity to present the plaintiff's side of the story).

Accordingly, the Court grants summary judgment to Defendant on Plaintiff's § 1983 claim.

### Title VII and FCRA – Race Discrimination (Counts II and IV)

Defendant also moves for summary judgment on Plaintiff's claims for race discrimination under Title VII and FCRA. Title VII prohibits racial discrimination against individuals with respect to compensation, terms, conditions, or privileges of

employment.  42 U.S.C. § 2000e-2(a)(1).  An employer violates Title VII when it discriminates against an employee by taking a tangible adverse employment action, that is, an action that brings about a serious and material change in the terms and conditions of employment.  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39 (11th Cir. 2001).  Alternatively, an employer violates Title VII when it discriminates against an employee by actions that cumulatively create a hostile work environment that constitutes a material change in the terms and conditions of employment.  *Ng v. Brennan*, 8:17-cv-509-T-36AEP, 2019 WL 2436581, at *4 (M.D. Fla. June 11, 2019).  Plaintiff alleges both types of discrimination.

<u>Tangible Adverse Employment Actions</u>

*School Resource Officer ("SRO") Position*

Plaintiff complains that Defendant engaged in racial discrimination when it promoted two non-African American officers, rather than Plaintiff, to two SRO positions that opened in 2018.  Defendant argues that it is entitled to summary judgment because Defendant offered a non-discriminatory reason for the promotions and Plaintiff has failed to offer evidence that Defendant's stated reason constituted a pretext for discrimination.

Absent direct evidence of discrimination, a plaintiff may establish a prima facie case that a defendant engaged in discrimination when it failed to promote the plaintiff by evidence that: (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for and applied for the position, (3) the plaintiff was rejected despite his or her qualifications; and (4) the position was given to an individual outside the plaintiff's protected class.  *See, e.g., EEOC v. Cigar City Motors, Inc.*,

8:18-cv-2055-T-CPT, 2020 WL 10058150, at *4 (M.D. Fla. Sept. 23, 2020).[1]   If the plaintiff presents a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions.  *Cigar City Motors*, 2020 WL 10058150, at *4.  If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely a pretext for unlawful discrimination.  *Id.*

As an alternative to the foregoing burden-shifting framework, a plaintiff may present a "convincing mosaic" of circumstantial evidence by producing evidence of "(1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees," and that (3) that the employer's reason for its action was merely pretextual.  *Id.*  (internal quotations omitted)

Defendant has not challenged Plaintiff's presentation of a prima facie case with respect to the SRO decision, and so under either framework the Court's inquiry focuses on whether the Defendant's proffered reason for its decision is pretextual. In this case, Defendant's proffered reason is that school board members of an oral interview board recommended the two other applicants rather than Plaintiff.  Chief Mattmuller has stated that he decided to follow that recommendation.  The burden therefore shifts to Plaintiff to demonstrate that reason is pretextual.

---

[1] Discrimination claims under the FCRA are governed by the same standards as claims under Title VII.  *See, e.g.*, *DeBose v. USF Bd. of Trustees*, 811 F. App'x 547, 553-54 (11th Cir. 2020), *cert. denied sub nom. DeBose v. Univ. of S. Florida Bd. of Trustees*, No. 2020-1140, 2021 WL 1520827 (U.S. Apr. 19, 2021)

The Eleventh Circuit has observed that "[a] reason is pretextual only if it is false and the true reason for the decision is discrimination." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020); *Langford v. Magnolia Advanced Materials, Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)). The plaintiff must "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Where the defendant provides multiple nondiscriminatory reasons for its actions, the plaintiff must rebut each reason as pretextual. *Hicks-Washington*, 803 F. App'x at 303.

Plaintiff's proffered evidence fails to meet his burden of showing pretext. Plaintiff suggests that he was basically set up to fail by having his interview with the school board members scheduled for immediately after he was interrogated by the VPD in connection with an internal affairs investigation. Chief Mattmuller, however, testified in deposition that those scheduling the school board interview

would not have known about the scheduling of the IA interview.  Plaintiff offers no contrary evidence and no evidence to support his theory about the interview schedule.

Plaintiff argues that pretext is also shown by the fact that when the first of the two SRO positions was initially posted in March 2018, Plaintiff was the only candidate to submit a letter of interest, yet Defendant failed to promote him immediately and instead delayed the hiring process to allow other applicants to come forward.  But Chief Mattmuller explained that shortly after the posting of the first position, he learned there would be at least one more SRO position to fill and decided it would be more efficient to fill them both by one process, rather than piecemeal.  Plaintiff takes issue with this reasoning, but this is simply quarrelling with the wisdom of Defendant's decision rather than demonstrating such weaknesses and inconsistencies that Defendant's position is unworthy of credence. *See Davidson v. Chspsc LLC*, No. 20-14201, 2021 WL 2550400, at *5 (11th Cir. June 22, 2021) (holding that the plaintiff failed to show that the employer's proffered reasons were pretextual where her arguments "essentially quarrel[ed] with the wisdom of [her employer's] business decision and fail to show how [the employer] lacked a good faith belief that [the plaintiff] had committed the misconduct that formed the basis for her termination"); *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that the wisdom of an employer's decision is irrelevant as long as it was not made with a discriminatory motive).  Accordingly, Plaintiff has failed to present a genuine issue for trial as to Defendant's failure to promote him.

*48-hour suspension*

Plaintiff argues that a 48-hour suspension constituted a discriminatory adverse employment action because other non-African Americans who engaged in similar conduct received no discipline or lighter discipline.  In moving for summary judgment, Defendant argues that Plaintiff has failed to offer evidence of similarly-situated officers outside Plaintiff's protected class being treated differently and has failed to show that Defendant's proffered reasons for the suspension were pretextual.

In the context of an employer's disciplinary actions, a plaintiff can establish a prima facie case by showing: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to perform the job; and (4) his employer treated "similarly situated" employees outside the plaintiff's class more favorably.  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019). To establish a plaintiff's prima facie case, the proposed comparators must be "similarly situated in all material respects."  *Id.* at 1218.

Once the plaintiff has established a prima facie case the burden then shifts to the defendant to "articulate legitimate, nondiscriminatory reasons for its actions." *Lewis*, 918 F.3d at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Once the defendant puts forth a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the defendant's reasons were a pretext for discrimination.  *Lewis*, 918 F.3d at 1221.

Plaintiff's suspension was based on an incident in which a citizen complained because Plaintiff improperly arrested him for driving without a license when he had a temporary permit. Chief Mattmuller stated in his deposition that the disciplinary action was based on, among other things, the fact that Plaintiff had committed multiple violations of policy and had involved multiple agencies in addition to the VPD (court personnel, for example) to correct the mistake. The suspension was upheld by an independent hearing officer, who found Chief Mattmuller's reasons for the 48-hour suspension were not arbitrary or capricious but legitimate and appropriate.

Plaintiff argues that the severity of the discipline was inconsistent with the way other non-African American officers were treated in similar circumstances, thereby demonstrating disparate treatment and that the proffered explanation for the discipline was pretextual. In support of this argument, Plaintiff cites incidents where various officers engaged in such disparate conduct as being late for work, causing traffic accidents, and undertaking high-speed chases while denying to the dispatcher they were doing so. Plaintiff points to a few incidents involving arrests but presents no evidence they were comparable to the incident that led to Plaintiff's suspension. In one instance, officers were accused of improperly arresting individuals for a burglary, but unlike the situation with Plaintiff, the internal investigation determined that the officers acted properly and within policy guidelines. In another, officers ordered individuals out of a car at gunpoint mistakenly believing the car was stolen, but no arrests were made and no other agencies involved.

In short, Plaintiff has not presented evidence of sufficiently similar incidents to allow a reasonable jury to conclude that Plaintiff was treated differently from other similarly situated officers when he was suspended or that Defendant's proffered explanation for the suspension was unworthy of credence.  Accordingly, Plaintiff has not shown a genuine issue for trial as to the suspension.

<u>Hostile Work Environment</u>

Plaintiff also alleges that Defendant discriminated against him by creating or allowing a hostile work environment in violation of Title VII.  Defendant moves for summary judgment on this claim, arguing that Plaintiff has no evidence that the work environment was sufficiently severe or pervasive to constitute a hostile work environment, and he has no evidence that Defendant bears responsibility for the work environment.

To prevail on a hostile work environment claim, a plaintiff must show that "(1) he is a member of a protected group; (2) who has been subjected to unwelcome harassment; (3) based on a protected characteristic; (4) that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that his employer is vicariously or directly liable for the environment."  *Ng*, 2019 WL 2436581, at *6 (internal quotations omitted).   Defendant argues that Plaintiff has failed to demonstrate harassment that was sufficiently severe or pervasive and that Defendant cannot be held liable because it has established an affirmative defense.

*Severe or Pervasive Conduct*

In assessing whether alleged actions are sufficiently severe and pervasive, courts look to the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with the employee's job performance. *E.g., Ng,* 2019 WL 2436581, at *6 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). Petty office squabbles, communication issues, and "ordinary workplace tribulations" are insufficient to create a hostile work environment. *Mahone v. CSX Transp., Inc.*, 652 F. App'x 820, 823 (11th Cir. 2016) (internal quotations omitted); *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 905 (11th Cir. 2015). Instead, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment." *Tonkyro v. Sec'y, Dep't of Veterans Affairs,* 995 F.3d 828, 836-37 (11th Cir. 2021) (internal quotation omitted). Moreover, the "intimidation, ridicule, and insult" must have connotations related to the employee's protected status (here, Plaintiff's race) to be actionable. *See id*. at 837 (holding in a gender discrimination case that the "intimidation, ridicule, and insult must also bear 'the necessary sexual or other gender-related connotations to be actionable sex discrimination'") (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (en banc)).

Plaintiff alleges a number of incidents from November 2017 to July 2018 that relate or arguably relate to Plaintiff's race.[2]  In November 2017, Sergeant Leisenring visited Plaintiff in the hospital and asked why Plaintiff was dating a white woman.  In late December 2017, Lieutenant Chappa ordered Plaintiff, over his objection, to remove racist graffiti (specifically, the word "nigger") from rocks in a public park.  A few days later, when Plaintiff attempted to speak with Sergeant Leisenring at roll call, Sergeant Gregoire, within the hearing of numerous other officers at the roll call, used the word "nigger" in reference to Plaintiff and stated, "When you get done sucking his dick, you can come suck my dick   That's what you all like to do."  When Plaintiff complained to Leisenring, Leisenring shrugged it off, telling Plaintiff that that "sometimes we do things in appropriately" and Gregoire was never disciplined for this public abuse.

In April 2018, Plaintiff found an uneaten banana in the trunk of his patrol car, presumably left there by Officer Long who used the vehicle on an earlier shift. Given the potentially racist connotations of the banana, Plaintiff complained to

---

[2] Plaintiff cites other incidents in support of his hostile work environment claim. Two of these – Plaintiff's failure to be promoted to the SRO position and his 48 hour suspension – are better addressed as discrete adverse employment actions rather than as part of a hostile work environment claim, and as discussed above, there is no evidence they were racially discriminatory. Plaintiff also points to an incident in which a "smiley face" emoji with a bullet hole in its head appeared on a computer in the patrol car Plaintiff shared with Officer Long.  The undisputed evidence is that Officer Long had used this image, drawn from the *Watchmen* graphic novel, on his computer and elsewhere since 2009 in contexts having nothing to do with Plaintiff.  Accordingly, the Court finds that none of these events contributed to a hostile work environment.  Plaintiff refers to numerous other instances of alleged mistreatment that also facially appear to have nothing to do with his race.  Some decisions have allowed facially neutral conduct to bolster a hostile work environment claim where evidence of overtly discriminatory treatment also exists.  However, the Court has not determined whether and to what extent these other events will be admissible at trial.

Chief Mattmuller, but no investigation or disciplinary action followed.  In May 2018, Sergeant Gregoire became irate because Plaintiff had ticketed Gregoire's daughter as being at fault in a traffic accident.  Gregoire accosted Plaintiff and told him he should "fuck him up" and again called Plaintiff a "nigger."  This took place in front of Lieutenant Resch, who had to pull Gregoire away, but Gregoire was never disciplined.

In July 2018, a citizen informed Plaintiff that Officer Long had told her that "Black" (referring to Plaintiff) was going to be fired soon, and Plaintiff has personally heard Long refer to him as "Black" rather than by his name on other occasions as well.  Plaintiff asserts that other officers, including supervisors, have also referred to him as "Black" in a derogatory manner.  Plaintiff says that as a result of his treatment, he feels isolated and ostracized, has lost confidence in himself, and does not receive the cooperation and respect needed to perform his job.

These events do not constitute mere "ordinary office tribulations."  The Court finds particularly disturbing the use of a racial slur and offensive sexual language by Sergeant Gregoire, uttered at a roll call before other officers in a context likely to embarrass and humiliate Plaintiff, followed by a cavalier dismissal of Gregoire's conduct by another superior officer as merely "inappropriate."  *See, e.g.*, *Cooler v. Layne Christensen Co.*, 710 F. App'x 842 (11th Cir. 2017) (holding that supervisor's use of the slur "nigger" in a context arguably intended to humiliate the plaintiff, together with other evidence of racial hostility, created an issue of fact as to

whether a hostile work environment existed.). [3]  Taking into account the time frame, the number of events, their nature, frequency and severity, and the impact on Plaintiff's ability to work, Plaintiff has presented sufficient evidence to create a fact issue on whether the alleged misconduct was sufficiently severe or pervasive to create a hostile work environment.  *See Adams v. Austal*, 754 F.3d 1240, 1250-54 (11th Cir. 2014) (finding that plaintiffs who experienced racial slurs targeting them personally, combined with other evidence, created an issue of fact on hostile work environment); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1302-04 (11th Cir. 2012) (concluding that seven incidents of racist acts over one year period, including incidents involving the placing of banana peels on the plaintiff's truck, raised an issue of fact on the existence of a hostile work environment).

Accordingly, Defendants' motion for summary judgment is denied to the extent Plaintiff alleges a hostile work environment.

---

[3] "'The use of the slur "nigger" is severe.'"  *Cooler*, 710 F. App'x at 848 (quoting *Adams v. Austal*, USA, LLC, 754 F.3d 1240, 1250 (11th Cir. 2014)).  It has been observed that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation omitted).  To be clear, however, the Court is not ruling that a single use or a few uses of such language is necessarily sufficient to create a jury issue on the existence of a hostile work environment.  *See Cooler*, 710 F. App'x at 848 (noting that "we have held that, in isolation, the use of a racial epithet on one occasion is not enough evidence of severe or pervasive harassment to make a hostile work environment claim.")  The Court rules only that the totality of the specific record evidence in this case, including but not limited to the racial epithets and the context in which they were used, creates a jury issue on hostile work environment.

*Vicarious or Direct Liability*

A Title VII plaintiff must establish a basis for holding the defendant responsible for the hostile work environment. *Ng*, 2019 WL 2436581, at *6. Defendant argues that it has demonstrated as an affirmative defense that it had adequate anti-harassment policies and complaint procedures in place and that Plaintiff unreasonably failed to take advantage of them, citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Defendant argues that when Plaintiff reported alleged misconduct by Officer Long to Lieutenant Chappa, Plaintiff failed to properly follow up. The record, however, presents issues of fact on whether Plaintiff acted with due care in providing information to Chappa, or whether Chappa could be faulted for failing to pursue the investigation further when, according to Plaintiff, he had provided her all the information she needed.

More fundamentally, the *Faragher-Ellerth* defense applies where the harasser is a "supervisor." *Beckford v. Dep't of Corr.*, 605 F.3d 951, 960-61 (11th Cir. 2010) (district court correctly declined to instruct jury on employer's reasonable care and employee's failure to take advantage of harassment complaint process where alleged harassment was not by a supervisor). In such cases, the employer may be held vicariously liable, that is, liable without any further proof of negligence by the employer in allowing the harassment. The employer may assert as an affirmative defense that it used reasonable care to prevent and promptly correct any harassing behavior – typically by showing the existence of appropriate anti-harassment policies and complaint procedures – and that the plaintiff failed to take

advantage of them. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). For purposes of this analysis, a "supervisor" is defined as one who has the power to make tangible employment decisions with respect to the plaintiff such as hiring or firing. *Id.* at 450. But neither side has presented evidence or argument on the VPD's and the City's management and reporting structure sufficient to allow the Court to reach a conclusion as a matter of law on whether the individuals allegedly involved in harassing Plaintiff were supervisors as defined in *Vance*, and therefore whether the defense applies.

When the alleged harassers are non-supervisors, the plaintiff bears the burden of showing that the employer is directly liable by showing the employer knew or should have known of the harassment but failed to take prompt and effective remedial action. *Smith v. City of New Smyrna Beach*, 6:11-cv-1110-Orl-37, 2012 WL 6721002, at *8 (M.D. Fla. Dec. 27, 2012). The Court is also unable to conclude as a matter of law whether Plaintiff's reporting matters to various individuals, including sergeants, lieutenants, and Chief Mattmuller, was reasonable or sufficient to charge Defendant with notice or actual knowledge of the harassment. *See Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997) (holding that, when "there is evidence from which a jury reasonably could infer that the employer *did* know of the harassment . . . the existence of a policy – no matter how well-designed – will not absolve an employer of liability under Title VII"). The Court also notes that while Defendant's anti-harassment policy provides that complaints should be made to the employee's supervisor and to the human resources director, it also provides that "[m]anagers who know or become aware of

potential harassment have an affirmative duty to report all complaints of harassment to the director of human resources, to ensure that they are resolved promptly and effectively." *See Torres v. Pisano*, 116 F.3d 625, 637 (2d Cir. 1997) (holding that employer is charged with knowledge of person who has a duty to inform the company of harassment); *Nuri v. PRC*, 13 F. Supp. 2d 1296, 1304 n.8 (M.D. Ala. 1998) (citing *Torres* with approval); *see also Price v. Roanoke City Bd. of Educ.*, No. 3:06-cv-742-MEF, 2007 WL 3171376 (M.D. Fla. Oct. 26, 2007) (holding that an issue of fact was presented as to whether employee reasonably believed the person she complained to was her "supervisor" within the meaning of the anti-harassment policy provided to her).[4]

Accordingly, Defendant's motion for summary judgment is denied as to this ground.

### Title VII and FCRA – Retaliation (Counts III and V)

Defendant moves for summary judgment on Plaintiff's retaliation claims, which are reviewed under the same burden-shifting framework discussed above for discrimination claims. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Ceus v. City of Tampa*, 803 F. App'x 235, 244, at *6 (11th Cir. 2020). The only difference in the analyses is that the prima facie case for retaliation requires the plaintiff to establish: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was some causal connection

---

[4] Plaintiff points to evidence of isolated events involving other employees, to Defendant's settlement of a discrimination claim by another individual, and to historical ordinances or policies enacted in 1927 and 1947. To the extent such evidence might be admissible, Court does not find it probative or relevant to its summary judgment analysis.

between the two events. *Johnson*, 948 F.3d at 1325.  To establish causation, a plaintiff must be able to show "but-for" causation.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  The Eleventh Circuit has held that when a plaintiff relies on mere temporal proximity to establish causation, the proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see, e.g.*, *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (holding that a two-month gap is not "very close").

Defendant argues that Plaintiff has shown no causal connection between any protected activity and adverse employment actions, nor has Plaintiff shown that the reasons given for the complained-of actions were pretextual.   Plaintiff offers virtually no response to these arguments.  He simply refers to the actions as "retaliatory" and argues that "temporal proximity" is shown by Plaintiff's "quick opposition" to adverse employment actions.  Showing the requisite temporal connection, however, involves showing that the adverse action *followed* the complaint or other protected activity with sufficient closeness.  It cannot be shown by adverse events that occurred before the protected activity.  *See, e.g.*, *Giakoumakis v. Maronda Homes, Inc. of Fla.*, 5:08-cv-487-Oc-10GRJ, 2010 WL 11507432, at *11 (M.D. Fla. Mar. 26, 2010).

Plaintiff complained to Sergeant Leisenring about Gregoire's offensive comments at roll call on December 29, 2017.  The next alleged adverse event occurred almost three months later when an allegedly fabricated citizen complaint initiated an IA investigation regarding Plaintiff's conduct.  Four months later, Plaintiff found a banana in the trunk of his patrol car, followed by Gregoire's

outburst against Plaintiff for ticketing his daughter about three weeks after that. While Plaintiff found a banana in the trunk of his patrol car a little over a week after he mentioned to Lieutenant Resch that he believed he was experiencing a hostile work environment, this event by itself cannot support a retaliation claim since standing alone it did not constitute a materially adverse employment action. *See McQueen v. Alabama Dep't of Transp.*, 769 F. App'x 816, 823-24 (11th Cir. 2019) ("An adverse employment action in the context of retaliation is one that harmed the plaintiff and 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). To the extent Plaintiff seeks to show a retaliatory hostile work environment, rather than discrete adverse acts, there is no evidence to support a causal connection between the totality of events that allegedly created the hostile environment and any protected activity by Plaintiff.

Plaintiff has failed to demonstrate a genuine issue of fact as to whether any materially adverse employment action was causally connected to protected activity. Accordingly, summary judgment is granted on Plaintiff's claims for retaliation.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's Amended Case Dispositive Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 50) is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **GRANTED** with respect to Plaintiff's claim in Count I under 42 U.S.C. § 1983, as to Plaintiff's claims in Counts II and IV for

discrimination based on tangible adverse employment actions, and as to

Plaintiff's claims for retaliation in Counts III and V.

3.  The motion is **DENIED** as to Plaintiff's claims in Counts II and IV for

discrimination based on hostile work environment.

4.   The Court will enter a final judgment once all claims have been resolved.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of

September, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**